# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **Hazel Chikumba** | ) |
| 4728 71 St Budiriro 3 | ) |
| Harare | ) **CIVIL ACTION NO.** |
| Zimbabwe | ) |
| | ) **COMPLAINT FOR DECLARATORY AND** |
| **Bibi Husna Saddet** | ) **INJUNCTIVE RELIEF** |
| 26th street, Shaha Tower 1704, | ) |
| Al Majaz 3, Sharjah | ) |
| United Arab Emirates | ) |
| | ) |
| **Seyedeh Rahil Mousavi** | ) |
| Homafar Alley, S Sazman Barnameh St. | ) |
| Naser Hejazi Blvd, Spt. Unit 33, No. 14 | ) |
| Tehran, Tehran 1483764561 | ) |
| Iran | ) |
| | ) |
| **Yvonne Wright** | ) |
| 28a Gateway Crescent | ) |
| Magodo, Lagos | ) |
| Nigeria | ) |
| | ) |
| **Yonatan Tewelde Gebru** | ) |
| Block A812 Kindaruma, Kilimani, | ) |
| Nairobi | ) |
| Kenya | ) |
| | ) |
| **Aiyda Almohamad Hajikhedr** | ) |
| Sharjah, Al Qasba | ) |
| Alseer Tower Apt 508 | ) |
| United Arab Emirates | ) |
| | ) |
| **Gholamhassan Homayoni** | ) |
| No 19 End of Eastern8Behesht | ) |
| Isfahan, Isfahan 8157983981 | ) |
| Iran | ) |
| | ) |
| **Orjwan Adel Mohammed Algharasi** | ) |
| 4 Al-miqyas APT 4 | ) |
| Manial, Old Cairo, Cairo | ) |
| Egypt | ) |
| | ) |
| **Sengthong Phengvihane** | ) |

1

Thinthen Village )
Hatxayfong District, Vientiane )
Laos )
 )
**Somsaveng Phengthala** )
1032/86-88 Phahonyothin Road )
18/1, #B-310 )
Chom Phon Chatuchak, Bangkok10900 )
Thailand )
 )
**Parvin Najafi** )
54 2nd Andisheh St. Apt 9 )
N Sohrevardi )
Tehran 1569635733 )
Iran )
 )
**Majd Salloum** )
Dicken Circus 1 )
Motor City, Dubai )
United Arab Emirates )
 )
**Ayivi Aziadapou** )
Agoe Telesou, Lome )
Togo )
 )
**Ali Fisal Assi** )
Ruwaisat Jdeideh Area, Mentn Governorate, )
street 1 1202 )
Lebanon )
 )
**Aya Abdelmajeed** )
3rd Island )
New Cham, Damascus )
Syria )
 )
**Fatemeh Nikzad Khasmakhi** )
Benno Elkan Allee 1 )
44137 Durtmund, NRW )
Germany )
 )
**Akouvi Octavie Audrine Dalmeida** )
Lomé )
Togo )
 )
 )
 )

2

**Mahya Sadat Lajevardi** )
ELMS BT2, 1st McClintock St, )
Belfast, Northern Ireland, UK BT2 7GL )
 )
**Rola Ghassan Shlil** )
Qattinah Near Qattinah Sporting Club, )
Qattinah, Homs )
Syria )
 )
**Maya Al Azmeh** )
Mashroo Dumar )
Island 5 Tower 13 Floor 8 )
Syria )
 )
**Roland Hounkanlin** )
C1734 Fidjrosse Centre )
Cotonou )
Benin )
 )
**Htet Htet Aung** )
733/20 Phran Nok Soi 10 )
Ban Chang Lo, Bang Khun Non )
Bangkok 10700 )
Thailand )
 )
**Yahya Abouie** )
Farhang St - Hafez St )
- Farhangian St-  Pardis Building, Unit 2 )
Sari, Mazandaran4818818518 )
Iran )
 )
**Reza Ganjdanesh** )
6 Fakhar Alley, Unit 4, )
Tehran, Tehran19146-13811 )
Iran )
 )
**Hasan Ateeq Khadhour** )
Omar Mukhtar St. )
Hay Alkhamsamaya, Houn )
Libya )
 )
**Muhammad Ahmad Issa** )
677 Muzafin St. )
Qamishli )
Syria )
 )

|                                          |     |
|------------------------------------------|-----|
| Plaintiffs,                              | )   |
|                                          | )   |
| v.                                       | )   |
|                                          | )   |
| **U.S. Department of State,**            | )   |
|                                          | )   |
| **Marco Rubio,** in his official capacity as | ) |
| Secretary of State                       | )   |
|                                          | )   |
| Defendants.                              | )   |
|                                          | )   |

## INTRODUCTION

1. Congress has mandated that "all" "immigrant visa" and "nonimmigrant visa applications" "shall" "be reviewed and adjudicated" by a Department of State consular officer. 8 U.S.C. § 1202(b), (d). Additionally, the Department of State is not permitted to "discriminate[]" "because of the person's race, sex, nationality, place of birth, or place of residence" when discharging its statutory duty related to "issuance of an immigrant visa." 8 U.S.C. § 1152(a)(1)(A).

2. Despite these statutory mandates, the Department of State has announced a freeze on visa issuance for nationals of 39 countries. U.S. Dep't of State, *Suspension of Visa Issuance to Foreign Nationals to Protect the Security of the United States*, https://travel.state.gov/content/travel/en/News/visas-news/suspension-of-visa-issuance-to-foreign-nationals-to-protect-the-security-of-the-united-states.html (last visited Jan. 12, 2026).

3. As its basis for this freeze, the Department of State cites two Presidential Proclamations jointly prohibiting the *entry* of nationals from 39 countries. *Id*. In doing so, the Department of State has "extra-textually expand[ed] Section 1182(f) through its implementing guidance" to take what is solely and exclusively a ban on *entry* of noncitizens into the United States to ban the *issuance* of visas. *Refugee & Immigrant Ctr for Educ. & Legal Servs. v. Noem,* No. 25-

4

*5243,* 2025 U.S. App. LEXIS 19422 *39 (D.C. Cir. Aug. 1, 2025).A visa allows a prospective immigrant  "to travel to a port of entry, airport or land border crossing, and *request permission* of the Department of Homeland Security (DHS), Customs and Border Protection (CBP) inspector to enter the United States." U.S. Dep't of State, *What Is a U.S. Visa?,* Travel.State.Gov, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/frequently-asked-questions/what-is-us-visa.html (last visited Jan. 29, 2026) (emphasis added). As such, the visa issuance process is separate and distinct from whether the individual with a visa may *enter* the United States. Those with visas may still be refused entry into the U.S. In fact, every U.S. visa application contains a statement explaining that a visa holder is not "entitle[d]" "to be admitted" to the United States if a U.S. immigration official finds the visa holder "to be inadmissible under this chapter, or any other provision of law." 8 U.S.C. § 1201(h); *Trump v. Hawaii*, 585 U.S. 667, 694-95, 138 S. Ct. 2392 (2018).

4.  8 U.S.C. § 1182(f) (Section 212(f) of the Immigration and Nationality Act) allows the President to temporarily suspend or restrict entry of any class of immigrants or nonimmigrants if he finds that their entry would be detrimental to the interests of the United States. However, this authority does not authorize the Department of State to cease its statutorily mandated function to adjudicate all visas for which an application is submitted.

5.  Because visas merely permit someone to apply for entry—not to actually enter the U.S.—courts faced with this issue have universally refused to expand authority to restrict entry under § 1182(f) into the context of visa processing. *See Thein v. Trump*, No. 25-cv-2369 (SLS), 2025 WL 2418402, at *29-30 (D.D.C. Aug. 21, 2025) ("Several other courts in this District have held that the Department of State cannot rely on proclamations issued pursuant to 8 U.S.C. § 1182(f) to deny visa applications . . . Today, this Court joins that chorus . . .

Plain as day, Subsection 1182(f) addresses only the question of entry, not the issuance of visas. No doubt that is why Proclamation 10949 itself only speaks to admissibility"). *See, e.g.*, *Rai v. Biden*, 567 F. Supp. 3d 180, 194 (D.D.C. 2021); *Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 233–35 (D.D.C. 2021); *Milligan*, 502 F. Supp. 3d at 314–16; *Gomez I*, 485 F. Supp. 3d 145, 191–94 (D.D.C. 2020). *See also Tate v. Pompeo*, 513 F. Supp. 3d 132, 145 (D.D.C. 2021) ("Because § 1182(f) concerns itself only with entry, a person subject to a Presidential Proclamation relying on § 1182(f) is only ineligible to enter, but not ineligible for a visa."); *see also Kinsley v. Blinken*, No. 21-cv-00962 (JEB), 2021 WL 4551907 at *16 (D.D.C. Oct. 5, 2021) (mem. op.) ("The Court ultimately concludes that the Department cannot rely on § 1182(f) to maintain a policy of not adjudicating nonimmigrant visas from Proclamation countries.").

6.  Plaintiffs are noncitizens who have applied for various nonimmigrant and immigrant visas, paid the required fees, and in some cases, been interviewed by a consular officer, and in some cases denied a visa based solely on 1182(f).  Their visa applications have either had their processing paused entirely, or they have been placed into "administrative processing" for an indeterminate period of time. In some of these cases, Defendants has marked the visa as "refused."  "Refused" is not a final decision on a case by the Defendants, according to its own policies.  *See, e.g.,* 9 FAM 306.2-2(A)(2)(a) ("A prior INA 221(g) refusal entered for administrative processing may be overcome once you can determine administrative processing is completed and you receive any required AO response or other needed information."); *see also Nine Iraqi Allies Under Serious Threat v. Kerry*, 168 F. Supp. 3d 268, 287-289 (D.D.C. 2016) (discussing "refusals" under INA § 221(g) as being a step in the adjudicative process and not a final denial of the visa application).

7.  As a result of Defendants' unlawful expansion of § 1182(f) to include a suspension of visa issuance , Plaintiffs now face the prospect of having their visa applications not adjudicated or refused or in some cases denied during the temporary restriction or suspension of their entry. The unlawful suspension of visa adjudications, if left unchecked, will cause a backlog of applications that will prevent issuance of a visa *and* entry even if the restrictions on entry end. Because of these arbitrary, capricious, and unlawful acts by Defendants, Plaintiffs now bring this suit under the Administrative Procedure Act, 5 U.S.C. §§ 701-706, the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202.

## JURISDICTION AND VENUE

8.  This Court has subject matter jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331 (Federal Question Jurisdiction). This Court has authority to grant relief under the Mandamus Act (28 U.S.C. § 1361), the Declaratory Judgment Act (28 U.S.C. § 2201), and the Administrative Procedure Act, 5 U.S.C. § 702.

9.  This Court can also compel agency action that is unlawfully withheld, or which is contrary to law, an abuse of discretion, or arbitrary and capricious. 5 U.S.C. §§ 555(b), 706.

10. This Court also has jurisdiction to review executive action that is *ultra vires*. *See Chamber of Commerce v. Reich*, 74 F.3d 1322 (D.C. Cir. 1996).

11. Venue in this judicial district is proper under 28 U.S.C. § 1391(e) because this is a civil action in which Defendants are federal officers and agencies of the United States, a substantial part of the events or omissions giving rise to the claims occurred in this District, and Defendants are headquartered in this District.

12. All administrative remedies have been exhausted by Plaintiffs.

13. The doctrine of consular non-reviewability does not apply because Plaintiffs do not challenge a decision by a consular officer denying a visa. *See Nine Iraqi Allies Under Serious Threat Because of Their Faithful Serv. to the United States v. Kerry ("Nine Iraqi Allies")*, 168 F. Supp. 3d 268, 290 (D.D.C. 2016) ("[T]he doctrine of consular nonreviewability is not triggered until a consular officer has made a decision with respect to a particular visa application."). Rather, Plaintiffs challenge the agency's delay and refusal to act based on the *ultra vires* actions of the Department of State and its failure to act. *See Patel v. Reno*, 134 F.3d 929, 931 (9th Cir. 1997).

14. Plaintiffs have standing. Defendants' actions in refusing to adjudicate and issue visas has caused and continues to cause Plaintiffs a concrete and particularized injury by delaying Plaintiffs' ability to obtain immigrant or nonimmigrant visas and enter the United States thereby causing Plaintiffs additional delay be requiring re-application, re-interview, and re-payment of visa fees before a visa may be issued when the visa adjudication pause is lifted. The requested relief will redress these injuries by allowing these individuals to obtain the visas for which they are otherwise eligible.

## PARTIES

15. Plaintiff Hazel Chikumba is a citizen of Zimbabwe. Ms. Chikumba has a pending DS-260 immigrant visa application with case number JHN2025755414 at the U.S. Consulate General in Johannesburg, South Africa.

16. Plaintiff Bibi Husna Saddet is a citizen of Afghanistan. Ms. Saddet has a pending DS-260 immigrant visa application with case number DOH2025677003 at the U.S. Consulate in Doha, Qatar.

17. Plaintiff Seyedeh Rahil Mousavi is a citizen of Iran. Ms. Mousavi has a pending DS-260 immigrant visa application with case number AA00CYGT3R at the U.S. Consulate in Ankara, Turkey.

18. Plaintiff Yvonne Wright is a citizen of Nigeria and lawful permanent resident of the United States. Ms. Wright has three minor stepsons with pending DS-260 immigrant visa applications with case numbers LGS2024801029, LGS2024801028, and LGS2024806015 at the U.S. Consulate in Lagos, Nigeria.

19. Plaintiff Yonatan Tewelde Gebru is a citizen of Eritrea. Mr. Gebru has a pending DS-260 immigrant visa application with case number ASM2025516001 at the U.S. Consulate in Nairobi, Kenya.

20. Plaintiff Aiyda Almohamad Hajikhedr is a citizen of Syria. Ms. Hajikhedr has a pending DS-260 immigrant visa application (receipt number: ABD2021654011) with the U.S. Consulate in Abu Dhabi. Plaintiff's derivative family member also has a pending immigrant visa application (receipt number: ABD2023861011). The application remains pending.

21. Plaintiff Gholamhassan Homayoni is a citizen of Iran. Mr. Homayoni has a pending DS-260 immigrant visa application with the U.S. Consulate in Yerevan (receipt number: YRV2023637005). The application remains pending.

22. Plaintiff Orjwan Adel Mohammed Algharasi is a citizen of Yemen. Ms. Alghasari has a pending DS-260 immigrant visa application with case number JAK2025747001 at the U.S. Consulate in Jakarta, Indonesia.

23. Plaintiff Sengthong Phengvihane is a citizen of Laos. Ms. Phengvihane has a pending DS-260 immigrant visa application with case number VNT2023510003 at the U.S. Consulate in Vientiane, Laos.

24. Plaintiff Somsaveng Phengthala is a citizen of Laos. Ms. Phengthala has a pending DS-160 nonimmigrant visa application with case number AA00EWF8DZ at the U.S. Embassy in Bangkok, Thailand.

25. Plaintiff Parvin Najafi is a citizen of Iran. Ms. Najafi has a pending DS-260 immigrant visa application with case number ABD2023750138 at the U.S. Consulate in Abu Dhabi.

26. Plaintiff Majd Salloum is a citizen of Syria. Mr. Salloum has a pending DS-260 immigrant visa application with case number 2026AS00010576 at the U.S. Consulate in Amman, Jordan.

27. Plaintiff Ayivi Aziadapou is a citizen of Togo. Mr. Aziadapou has a pending DS-260 immigrant visa application with case number LOM2025759001 at the U.S. Consulate in Togo.

28. Plaintiff Ali Fisal Assi is a citizen of Syria. Mr. Assi has a pending DS-260 immigrant visa application with case number BRT2024738006 at the U.S. Embassy in Beirut, Lebanon.

29. Plaintiff Aya Abdelmajeed is a citizen of Syria. Ms. Abdelmajeed has a pending DS-260 immigrant visa application with case number BRT2025766005 at the U.S. Embassy in Beirut, Lebanon.

30. Plaintiff Fatemeh Nikzad Khasmakhi is a citizen of Iran. Ms. Nikzad Khasmakhi has a pending DS-160 nonimmigrant visa application with case number AA00F4TCIT at the U.S. Consulate in Frankfurt, Germany.

31. Plaintiff Akouvi Octavie Audrine Dalmeida is a citizen of Togo. Ms. Audrine Dalmeida has a pending DS-260 immigrant visa application with case number LOM2025545001.

32. Plaintiff Mahya Sadat Lajevardi is a citizen of Iran. Ms. Lajevardi has a pending DS-260 immigrant visa application with case number YRV2023608006 at the U.S. Embassy in Yerevan, Armenia.

33. Plaintiff Rola Ghassan Shlil is a citizen of Yemen. Ms. Shlil has a pending DS-260 immigrant visa application with case number DMS2025692013 at the U.S. Consulate in Amman, Jordan.

34. Plaintiff Maya Al Azmeh is a citizen of Syria. Ms. Al Azmeh has a pending DS-260 immigrant visa application with case number DMS2025768001 at the U.S. Consulate in Amman, Jordan.

35. Plaintiff Roland Hounkanlin is a citizen of Benin. Mr. Hounkanlin has a pending DS-260 immigrant visa application with case number COT2025820002 at the U.S. Consulate in Cotonou.

36. Plaintiff Htet Htet Aung is a citizen of Burma. Ms. Aung has a pending DS-260 immigrant visa application with case number BNK2025829001 at the U.S. Consulate in Bangkok.

37. Plaintiff Yahya Abouie is a citizen of Iran. Mr. Abouie has a pending DS-260 immigrant visa application with case number ANK2025746010 at the U.S. Consulate in Ankara. Plaintiff Abouie's family member has a DS-260 application with case number ANK2025746008.

38. Plaintiff Alireza Ganjadesh is a citizen of Iran. Mr. Ganjadesh has a pending DS-260 immigrant visa application with case number ANK2025758011 at the U.S. Consulate in Ankara. Plaintiff Ganjadesh's family member has a pending DS-260 immigrant visa application with case number ANK2025758010.

39. Plaintiff Hasan Ateeq Khadhour is a citizen of Libya. Mr. Khadour has a pending DS-260 immigrant visa application with case number TNS2025724001 at the U.S. Consulate in Tunisia.

40. Plaintiff Muhammad Ahmad Issa is a citizen of Syria. Mr. Issa has a pending application with case number AMM2024862002 with the U.S. Consulate in Amman, Jordan.

41. Defendant Department of State (DOS) is a cabinet-level department of the U.S. federal government. DOS is responsible for the issuance of nonimmigrant visas abroad. The Proclamations assign DOS a variety of responsibilities regarding their implementation and enforcement.

42. Defendant Marco Rubio is the U.S. Secretary of State and has responsibility for overseeing enforcement and implementation of the Proclamations by all DOS staff. He is sued in his official capacity.

## LEGAL BACKGROUND
### A.  Visa Issuance, Inadmissibility, and Admission

43. A visa allows a prospective immigrant to "to travel to a port of entry, airport or land border crossing, and *request permission* of the Department of Homeland Security (DHS), Customs and Border Protection (CBP) inspector to enter the United States." U.S. Dep't of State, *What Is a U.S. Visa?,* Travel.State.Gov, https://travel.state.gov/content/travel/en/us-visas/visa-information-resources/frequently-asked-questions/what-is-us-visa.html (last visited Jan. 6, 2026) (emphasis added).

44. There is no guarantee that U.S. immigration officials will grant  this "request" to enter the U.S. Indeed, every U.S. visa application contains a statement explaining that a visa holder is not "entitle[d]" "to be admitted" if a U.S. immigration official finds the visa holder "to be inadmissible under this chapter, or any other provision of law." 8 U.S.C. § 1201(h).

45. If a U.S. immigration official assents to the request lodged by a visa holder to enter the U.S., that visa holder is "admitted" into the U.S. 8 U.S.C. § 1101(a)(13)(A). This procedure—i.e. "lawful entry" "after inspection and authorization by an immigration officer"—constitutes an "admission." *Id*.

46. Inadmissibility refers to whether a prospective immigrant faces a statutory bar to being "admitted" into the U.S. Examples include whether a prospective immigrant has committed a specified crime, has communicable diseases of public health significance, or is likely to become a "public charge" reliant on government assistance. 8 USC § 1182(a).

47. People who are "inadmissible" may still be eligible to receive a visa and to be "admitted" into the U.S. The INA contains numerous "waivers" which overcome what would otherwise be bars to visa issuance and/or admission. Examples include INA § 212(d)(3) waivers (providing "advance permission to enter" despite a ground of inadmissibility); INA § 212(g) waivers (waiving certain health-related grounds of inadmissibility subject to bond and other conditions); and INA § 212(h) waivers (waiving certain criminal grounds of inadmissibility upon a finding of extreme hardship or other specified conditions).

48. Conversely, people who are "admissible" to the U.S. may nonetheless be ineligible to receive a visa and/or be "admitted" into the U.S. For example, applicants for nonimmigrant statuses may fail to demonstrate "nonimmigrant intent," rendering them ineligible to receive a nonimmigrant visa. INA § 214(b). Alternatively, an applicant may not be able to demonstrate the statutory prerequisites (*e.g.*, the existence of a "bona fide job offer" in the context of employment-based classifications) for receiving a given nonimmigrant or immigrant visa, rendering them ineligible to receive that particular visa. INA § 221(g) ("No visa or other documentation shall be issued to an alien if" "it appears to the consular officer, from

13

statements in the application, or in the papers submitted therewith, that such alien is ineligible to receive a visa or such other documentation under section 1182 of this title, or *any other provision of law*.") (emphasis added).

49. For this reason, 8 USC § 1182(a)—which enumerates the grounds of inadmissibility— specifies that "aliens who are inadmissible under the following paragraphs are," separately (1) "ineligible to receive visas" and (2) "ineligible to be admitted to the United States." However, conditions (1) and (2) apply "except as otherwise provided in this chapter." *Id*. This savings clause underscores that (a) eligibility to receive a visa, (b) whether someone is admitted to the U.S., and (c) inadmissibility are legally distinct concepts, even as they often overlap in practice.

50. Indeed, the INA is "rife with examples distinguishing" "visa issuance" "and "admissibility determinations," including "8 U. S. C. §1101(a)(4) ("The term 'application for admission' has reference to the application for admission into the United States and not to the application for the issuance of an immigrant or nonimmigrant visa."); "§1182(a)(3)(D)(iii) ("establishes to the satisfaction of the consular officer when applying for a visa . . . or to the satisfaction of the Attorney General when applying for admission"); §1182(h)(1)(A)(i) ("alien's application for a visa, admission, or adjustment of status")." *Trump* , 585 U.S. at 694-95. This "basic distinction" between "admissibility determinations" and "visa issuance runs throughout the INA." *Id*.

**B.  Entry & INA 212(f)**

51. Entry was previously defined by the INA as "any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise." 8 U.S.C. § 1101(a)(13) (1952).

52. This statutory definition was removed by the Illegal Immigration Reform and Immigrant Responsibility Act (IIRIRA) of 1996. In almost all cases, the INA replaced references to "entry" with "admission," defined as" "lawful entry" "after inspection and authorization by an immigration officer." 8 U.S.C. § 1101(a)(13)(A).

53. The Presidential Proclamations, cited by Defendants to justify the freeze on visa issuance, ban the "entry" of foreign nationals from 39 countries based on the President's authority under 8 USC § 1182(f). *See* Proclamation No. 10,998, *Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States*, 90 Fed. Reg. 59,717, 59,720 (Dec. 19, 2025) ("THEREFORE, I, DONALD J. TRUMP, President of the United States of America, by the authority vested in me by the Constitution and the laws of the United States of America, including sections 212(f) and 215(a) of the INA, 8 U.S.C. 1182(f) and 1185(a), and section 301 of title 3, United States Code, hereby find that, absent the measures set forth in this proclamation, the immigrant and nonimmigrant entry into the United States of persons described in sections 2, 3, 4, and 5 of this proclamation would be detrimental to the interests of the United States, and that their entry should be subject to certain restrictions, limitations, and exceptions."). *See also* Proclamation No. 10,949, *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 24,497 (June 10, 2025) ("I directed the Secretary of State, in coordination with the Attorney General, the Secretary of Homeland Security, and the Director of National Intelligence, to identify countries throughout the world for which vetting and screening information is so deficient as to warrant a full or partial suspension on the admission of nationals from those countries pursuant to section 212(f) of the Immigration and Nationality Act (INA), 8 U.S.C. 1182(f).").

54. This authority is one of few INA subsections which retained its 1952-era reference to "entry." That provision allows the President to "suspend the entry of all aliens or any class of aliens as immigrants or nonimmigrants" or "impose on the entry of aliens any restrictions he may deem to be appropriate" "[w]henever the President finds that the entry of any aliens or of any class of aliens into the United States would be detrimental to the interests of the United States." *Id*. This provision endows the President with authority to prevent specific groups of foreign nationals from entering the U.S., subject only to the restrictions that the President must (1) first find that these nationals' entry would be detrimental to the U.S. and (2) that the entry ban not be indefinite. *Trump v. Hawaii*, 585 U.S. 667, 686 (2018) ("We agree with plaintiffs that the word 'suspend' often connotes a 'defer[ral] till later'.").

55. 8 USC § 1182(f)'s authority is limited to its "sphere": prohibiting the physical *entry* of specific classes of foreign nationals into the U.S. *Hawaii*, 585 U.S. at 680. The Supreme Court is clear that courts should "assume that § 1182(f) does not allow the President to expressly override particular provisions of the INA." *Hawaii*, 585 U.S. at 682. Just as foreign nationals may be denied entry with a visa, foreign nationals without a visa can sometimes lawfully enter ("be admitted") to the U.S. The INA created a "visa waiver program" for such entries. 8 U.S.C. § 1187.

56. The Supreme Court has recognized this distinction between entry and visa issuance, noting that "[t]he concepts of entry and admission—but not issuance of a visa—are used interchangeably in the INA." *Hawaii*, 585 U.S. at 689, at n.4.

57. The ambit of INA § 212(f) bans on "entry" only encompasses the determination, made by a U.S. immigration official at a port of entry: whether an alien will be "admitted" to the U.S.

The INA separates this determination, governed by 8 U.S.C. § 1201(h), from the determination to grant someone a visa, governed by 8 U.S.C. § 1201(g).

58. Courts have thus declined to extend INA 212(f) into the visa issuance realm. *See Thein*, 2025 WL 2418402, at *29-30 ("Several other courts in this District have held that the Department of State cannot rely on proclamations issued pursuant to 8 U.S.C. § 1182(f) to deny visa applications. See, e.g., *Rai*, 567 F. Supp. 3d at 194; *Filazapovich*, 560 F. Supp. 3d at 233–35; *Milligan*, 502 F. Supp. 3d at 314–16; *Gomez I*, 485 F. Supp. 3d at 191–94. Today, **this Court joins that chorus**… **Plain as day, Subsection 1182(f) addresses only the question of entry, not the issuance of visas**. No doubt that is why Proclamation 10,949 itself only speaks to admissibility") (emphasis added). *See also Tate v. Pompeo*, 513 F. Supp. 3d 132, 147 (D.D.C. 2021) ("Because § 1182(f) concerns itself only with entry, a person subject to a Presidential Proclamation relying on § 1182(f) is only ineligible to enter, but not ineligible for a visa."). *Id*., at 150 ("Defendants have identified no applicable statutory authority permitting the State Department to suspend visa processing on the basis of the entry restrictions provided by the Presidential Proclamations. Persons subject to the Presidential Proclamations are not ineligible to receive visas under §§ 1182(f) and 1201(g), so plaintiffs are likely to succeed on the merits in their claim that the suspension and refusal of O visa processing is "not in accordance with law" and "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A), (C).").

**C.  The Presidential Proclamations & State Department Implementation**

59. Presidential Proclamations 10,998 and 10,949 were issued on June 4, 2025 and December 16, 2025, respectively, and jointly prohibit entry of foreign nationals from the 39 countries listed

17

pursuant to the President's INA § 212(f) authority.[1] *See* Proclamation No. 10,998, *Restricting and Limiting the Entry of Foreign Nationals to Protect the Security of the United States*, 90 Fed. Reg. 59,717 (Dec. 19, 2025) and Proclamation No. 10,949, *Restricting the Entry of Foreign Nationals To Protect the United States From Foreign Terrorists and Other National Security and Public Safety Threats*, 90 Fed. Reg. 24,497 (June 10, 2025).

60. The Department of State subsequently issued guidance implementing the Proclamations on December 23, 2025. There, the Department of State noted that "the United States is suspending or limiting entry **and visa issuance** to nationals of 39 countries as well as individuals applying using travel documents issued or endorsed by the Palestinian Authority," clarifying that "[a]pplicants who are subject to Presidential Proclamation 10,998 may still submit visa applications and attend scheduled interviews, but they may be **ineligible for visa issuance** or admission to the United States."  U.S. Dep't of State, *Presidential Proclamation 10,998 on Restricting and Limiting the Entry of Foreign Nationals*, TRAVEL.STATE.GOV (Dec. 23, 2025), https://travel.state.gov/content/travel/en/News/Intercountry-Adoption-News/presidential-proclamation-10,998-on-restricting-and-limiting-the-.html (emphasis added).

61. The Department of State provides an exception to the visa issuance ban when it determines "travel by an individual would serve the U.S. national interest," but that exception is a discretionary one. *Id*. In litigation, the Department of State provided a document explaining that the national interest exception (NIE) "should be used rarely and the relationship of the

---

[1] Afghanistan, Myanmar, Chad, the Republic of Congo, Equatorial Guinea, Eritrea, Haiti, Iran, Libya, Somalia, Sudan, Yemen, Burundi, Cuba, Laos, Sierra Leone, Togo, Turkmenistan and Venezuela from Presidential Proclamation 10,949 and Burkina Faso, Mali, Niger, South Sudan, Syria, Angola, Antigua and Barbuda, Benin, Cote d'Ivoire, Dominica, Gabon, The Gambia, Malawi, Mauritania, Nigeria, Senegal, Tanzania, Tonga, Zambia, and Zimbabwe from Presidential Proclamation 10,998.

travel to U.S. national interests should be exceptional in nature." Ex. 1, Implementation of

National Interest Exception for Presidential Proclamation 10,949. "Examples of travel that

would likely NOT qualify for an NIE absent other factors include:

> The applicant is traveling to visit or attend events involving family
> members who are U.S. citizens, LPRs, or lawfully admitted aliens;
> The applicant is traveling for education, work, or training in the
> United States. This includes continuing students or resuming
> employment;
> Travel that, if denied, would cause the applicant financial hardship,
> personal hardship (including but not limited to emotional distress),
> educational hardship, or non-critical harm to an applicant's health
> and well-being;
> The applicant is traveling to provide assistance to a U.S. citizen
> family member;
> The applicant is traveling for routine commercial or business
> purposes.

*Id.*, at 33-34.

62. The Department of State customarily sends non-public implementing guidance to diplomatic

and consular posts following Presidential Proclamations. As of this writing, Plaintiffs do not

know what, if any, non-public implementing guidance has been provided regarding

Presidential Proclamation 10,998. As of the date filing, two months after issuance of these

Proclamations, there are  no reports of any individual having been granted such waiver.

63. The implementing guidance regarding Proclamation No. 10,949 was disclosed in litigation.

In its analysis of this guidance, the Court noted that "the Department of State sent

implementing guidance to all diplomatic and consular posts worldwide… That guidance

informed consular officers that they should 'first determine whether [an] applicant is

otherwise eligible for a visa under the INA, without regard to the [Proclamation.]'… But

even if an applicant is otherwise eligible for a visa, if she is 'subject to [the Proclamation]'

she 'must be refused . . . , unless [she] qualifies for one of the [Proclamation's] narrowly

defined exceptions'… More specifically, for any applicants from countries subject to the

Proclamation, officers 'must refuse under INA 212(f)' any applicant not subject to an exception." *Thein* 2025 WL 2418402, at *5 (internal citations to administrative record omitted).

64. When individuals had their visa applications refused pursuant to Proclamation No. 10,949, they were provided one of two explanations: (1) that their applications were being denied outright based on Proclamation No. 10,949 or (2) that their applications "would have to undergo mandatory administrative processing" and that they will "receive another adjudication once such processing is completed." *Id.*, at 6, 9.

65. Upon information and belief, counsel's understanding is that Presidential Proclamation 10,998 is being implemented in a similar fashion: almost everyone covered by the Presidential Proclamation have their visa denied either outright or via administrative processing, with a handful of cases qualifying for a NIE. This implementation is unlawful in light of federal statutes.

## **FACTUAL BACKGROUND**

66. Plaintiffs are twenty-six foreign nationals from countries listed in the Presidential Proclamations with visa applications either pending with the U.S. Department of State as a result of the restriction on visa issuance, or who have had their visa applications unlawfully refused as a result of the restriction on visa issuance.

67. These refusals often include explicit references to § 212(f), 8 U.S.C. § 1182(f), as the basis for the refusal, with some embassies declaring, wholesale, that applicants will be refused under INA § 221(g), 8 U.S.C. § 1201(g), as a result of the presidential proclamations. Exhibit A, Notice from U.S. Embassy Almaty.

68. Defendants have not notified any Plaintiffs that he or she is statutorily ineligible or inadmissible to the United States under 8 U.S.C. § 1182(a).

69. Plaintiffs and, where applicable, their derivative family members have submitted complete applications for visas.

70. Defendants have refused to process Plaintiffs' visa applications due to Presidential Proclamation 10,998.

71. The freeze on the visa applications is due to Plaintiffs' national origin, which is expressly prohibited for Immigrant Visa applicants under 8 U.S.C. § 1152(a)(1)(A)

72. Across the board, Plaintiffs now face family separation, missed employment or study opportunities, anxiety and stress over cases stuck in an administrative limbo, and for some, physical danger.  They have paid the fees required for their applications to be processed, and now, solely due to an overreading of a restriction on *entry* as being a restriction on *visa issuance*, Plaintiffs collectively find themselves and their cases stuck in a way that courts have repeatedly found to be unlawful.  For these reasons, and those listed below, Plaintiffs bring this action against the U.S. Department of State.

## FIRST CAUSE OF ACTION
### (Arbitrary and Capricious Actions and Abuse of Discretion in Violation of the Administrative Procedures Act (5 U.S.C. § 706(2)(A))

73. Plaintiffs repeat and reallege all factual allegations above.

74. Pursuant to 5 U.S.C. § 701(b)(1), the Department of State is subject to the Administrative Procedure Act ("APA").

75. This Court may review and set aside all relevant questions of law regarding agency actions that are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. This Court may further review and set aside actions in excess of statutory jurisdiction,

authority, or limitations, or without observance of procedure required by law. 5 U.S.C. §

706(2)(A), (C), (D).

76. The INA distinguishes between entry, admission, and visa issuance. Section 1182(f)

authorizes the President only to suspend the *entry* of certain aliens into the United States. It

does not authorize the President to suspend the *issuance* of visas. *Hawaii*, 585 U.S. at 694-

95.

77. DOS has unlawfully implemented the Proclamations by suspending the adjudication and

issuance of visas to applicants subject to the Proclamations.

78. The implementation by the Department of State of the President's Proclamations suspending

the entry of aliens from certain countries and preventing visa applicants from pursuing a visa

constitutes final agency action, which is reviewable by this Court pursuant to the APA.

79. The agency actions to  suspend the adjudication of visas are  arbitrary and capricious and

abuses agency discretion because the Department of State lacks authority to suspend

adjudications of visas.

80. The Department of State's  implementation of the Proclamations is in excess of authority in

violation of § 706(2)(C) of the APA, as 8 U.S.C. § 1182(f) does not permit Defendants to

suspend the issuance of visas or deprive consular officers of the authority to issue visas to

individuals "who ha[ve] made proper application therefore." 8 U.S.C. § 1201(a)(1).

81. U.S. law creates a mandatory obligation to issue visas to eligible applicants. 8 U.S.C. §

1202(b) ("All immigrant visa applications **shall** be reviewed and adjudicated by a consular

officer.") (emphasis added). *See also* 8 U.S.C. § 1202(d) ("All nonimmigrant visa

applications **shall** be reviewed and adjudicated by a consular officer.") (emphasis added).

Courts have found that these statutory provisions are mandatory, not permissive. *See Filazapovich v. Dep't of State*, 560 F. Supp. 3d 203, 235 (D.D.C. Sept. 9, 2021).

82. As such, this Court should order the Department of State to resume issuing and reissuing visas to Plaintiffs and resume adjudication of all visa applications in an expedited manner.

## SECOND CAUSE OF ACTION
**(Agency Action Unreasonably Delayed and Unlawfully Withheld in Violation of the Administrative Procedures Act**
**(5 U.S.C. § 555(b); 5 U.S.C. § 706(1))**

83. Plaintiffs repeat and reallege the averments in all preceding paragraphs of this complaint.

84. District courts have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to them. 28 U.S.C. § 1361. In this case, Defendants have failed or refused to adjudicate Plaintiffs' applications for visas in a timely and reasonable manner even though they have a clear, non-discretionary duty to do so, and there is no other adequate remedy available to Plaintiffs.

85. Defendants have willfully and unreasonably delayed, and have refused to adjudicate, Plaintiffs' visa applications, thereby depriving Plaintiffs of the opportunity to obtain an immigration benefit and be reunited with family in the U.S.

86. Defendants owe Plaintiffs a duty to adjudicate the visas and have unreasonably failed to perform that duty.

87. Furthermore, Defendants have withheld from acting on Plaintiffs' cases without authority to do so. These actions  are *ultra vires*. .

88. Because the State Department's application of the proclamations are *ultra vires*, their suspension of adjudication and issuance of visas constitute unlawfully withheld action, which can be compelled by this Court under 5 U.S.C. § 706(1).

89. The Department of State has a nondiscretionary duty to make "immigrant visas" "available" "to eligible immigrants *in the order in which a petition in behalf of each such immigrant is filed* with the Attorney General." 8 U.S.C. § 1153(e)(1) (emphasis added). *Xie v. Kerry*, 780 F.3d 405, 408 (D.C. Cir. 2015) (holding that 1153(e)(1) includes a nondiscretionary duty that supports a 706(1) claim).

90. Additionally, the Department of State has a nondiscretionary duty to "conclude a matter presented to it . . . within a reasonable time." 5 U.S.C. § 555(b).

91. Nothing in statute authorizes the Department of State to wholesale suspend the issuance of visas pursuant to an entry ban issued by the President under 8 U.S.C. § 1182(f), as courts have repeatedly held. *Thein*, 2025 WL 2418402, at 29-30  ("Several other courts in this District have held that the Department of State cannot rely on proclamations issued pursuant to 8 U.S.C. § 1182(f) to deny visa applications. See, e.g., *Rai*, 567 F. Supp. 3d at 194; *Filazapovich*, 560 F. Supp. 3d at 233–35; *Milligan*, 502 F. Supp. 3d at 314–16; *Gomez I*, 485 F. Supp. 3d at 191–94. Today, this Court joins that chorus… Plain as day, Subsection 1182(f) addresses only the question of entry, not the issuance of visas. No doubt that is why Proclamation 10,949 itself only speaks to admissibility") (emphasis added). *See also Tate v. Pompeo*, 513 F. Supp. 3d 132, 147 (D.D.C. 2021) ("Because § 1182(f) concerns itself only with entry, a person subject to a Presidential Proclamation relying on § 1182(f) is only ineligible to enter, but not ineligible for a visa."). *Id*., at 150 ("Defendants have identified no applicable statutory authority permitting the State Department to suspend visa processing on the basis of the entry restrictions provided by the Presidential Proclamations. Persons subject to the Presidential Proclamations are not ineligible to receive visas under §§ 1182(f) and 1201(g), so plaintiffs are likely to succeed on the merits in their claim that the suspension and

refusal of O visa processing is "not in accordance with law" and "in excess of statutory . . . authority." 5 U.S.C. § 706(2)(A), (C).").

92. As such, this Court should order the Department of State to resume issuing and reissuing visas to Plaintiffs and resume adjudication of all visa applications.

### THIRD CAUSE OF ACTION
**(Ultra Vires Executive Action - Violation of 8 U.S.C. § 1152(a)(1)(A))**
**(Immigrant Visa Applicants Only)**

93. Plaintiffs incorporate the foregoing paragraphs as though fully set forth herein.

94. The INA, as enacted and amended by Congress, imposes limits on the executive's authority to classify and exclude aliens. Section 1152(a)(1)(A) of Title 8, U.S. Code (INA § 202(a)(1)(A)), provides that, with narrowly defined exceptions, "no person shall . . . be discriminated against in the issuance of an immigrant visa because of the person's race, sex, nationality, place of birth, or place of residence." 8 U.S.C. § 1152(a)(1)(A).

95. This provision, a part of the Immigration Act of 1965, was a landmark reform intended to eliminate the national origin quota system and ensure that immigrant visas are issued based on neutral criteria, not an applicant's nationality or ethnicity.[2]

96. In the present case, certain Plaintiffs are applicants for immigrant visas seeking to obtain those immigrant visas through a U.S. consulate or embassy and then seeking to enter the U.S.

97. The interplay between the issuance of an immigrant visa where a § 1182(f) ban is in effect— and the potential unlawful discrimination that such actions carry—is not new to the judiciary. Indeed, in *Trump v. Hawaii*, 585 U.S. 667 (2018), this issue was discussed at length. *Id.* at 686-87. In holding that a § 1182(f)'s suspension on entry for a temporary period, based on

---

[2] Nat'l Archives, Fifty Years Later: A Brief History of the Immigration Act of 1965 (Sept. 17, 2015), https://www.archives.gov/publications/prologue/2015/fall/immigration-act-of-1965

nationality alone, did  not run afoul of the prohibition on national origin discrimination in §

1152(a)(1)(A) in the context of entry restrictions, the Court stated:

> Sections 1182(f) and 1152(a)(1)(A) thus operate in different spheres: Section 1182 defines the universe of aliens who are admissible into the United States (and therefore eligible to receive a visa).  Once § 1182 sets the boundaries of admissibility into the United States, § 1152(a)(1)(A) prohibits discrimination in the allocation of immigrant visas based on nationality and other traits. The distinction between admissibility—to which § 1152(a)(1)(A) does not apply—and visa issuance—to which it does—is apparent from the text of the provision, which specifies only that its protections apply to the "issuance" of "immigrant visa[s] without mentioning admissibility or entry.

*Hawaii*, 585 U.S. at 686.

98. The logical corollary is that § 1152(a)(1)(A)'s prohibition on national origin discrimination applies to the spheres outside of entry, which includes the application and issuance of visas *prior to entry*.  Defendants' suspension of visa processing is unlawful because it runs afoul of § 1152(a)(1)(A)'s prohibition on national origin discrimination is in full effect and the Department of State is obligated to follow it.

99. Because the visa issuance freeze specifically prohibits the Department of State from adjudicating immigrant visa applications made outside the United States from any of the impacted countries, it is *ultra vires*, and "otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) or "short of statutory right" 5 U.S.C. § 706(2)(C).  The Court should therefore "hold unlawful and set aside" the visa issuance freeze as applied to Plaintiffs.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs request that this Court grant the following relief:

(1)    Assume jurisdiction over this matter;

(2)     Enjoin the Department of State from suspending issuance and reissuance of

nonimmigrant and immigrant visas and from otherwise suspending the

adjudication of visa applications.

(3)     Order the immediate issuance of visas to Plaintiffs who have been approved but

who have not received their visas;

(4)     Order the immediate rescheduling of interviews for Plaintiffs who have submitted

the required documentation and who either had their interviews cancelled or who

are waiting on new interviews, and that if approved visas for these Plaintiffs will

be expeditiously issued;

(5)     Order the immediate re-issuance of visas for Plaintiffs denied visa applications on

the basis of INA § 212(f);

(6)     Order any other relief that may be necessary, such as the extension of the validity

dates for the medical exam and police clearance certificates, so that the issuance

of Plaintiffs' visas will not be further delayed;

(7)     Order that all of the above shall be done expeditiously;

(8)     Award Plaintiffs costs of suit and reasonable attorney's fees under the Equal

Access to Justice Act, 42 U.S.C. §1988, and any other applicable law;

(9)     Enter all necessary writs, injunctions, and orders as justice and equity require.

(10)    Grant such further relief as this Court deems just and proper.


Respectfully submitted this the 2nd day of February, 2026

                                                            /s/ Zachary R. New
                                                            Zachary R. New*
                                                            Atty. Reg. No. (Colorado): 53992

27

Joseph & Hall, P.C.
12203 East Second Ave.
Aurora, CO 80011
(303) 297-9171
zachary@immigrationissues.com
*Motion for Pro Hac Vice forthcoming

/s/Charles H. Kuck
CHARLES H. KUCK
GA Bar No. 429940
Kuck Baxter LLC
350 Northridge Rd., Suite 300
Atlanta, GA 30350
404-949-8154
Ckuck@Immigration.net

/s/Jesse M. Bless
JESSE M. BLESS
MA Bar No. 660713
Bless Litigation LLC
6 Vineyard Lane
Georgetown MA 01833
781.704.3897
jesse@blesslitigation.com

/s/ Gregory Siskind
GREGORY SISKIND*
Atty. Reg. No. (Tennessee): 14487
Siskind Susser, P.C.
1028 Oakhaven Road
Memphis, TN 38119
gsiskind@visalaw.com
*Motion for Pro Hac Vice forthcoming

Attorneys for Plaintiffs